UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN BROCKETT,                              :
            Plaintiff,                        :
                                              :
      v.                                      :        CASE NO. 3:21-cv-355 (KAD)
                                              :
LUPAS, et al.,                                :
            Defendants.                       :

**MEMORANDUM OF DECISION AND INITIAL REVIEW ORDER**

Plaintiff, Steven Brockett ("Brockett"), a prisoner currently incarcerated at MacDougall-

Walker Correctional Institution in Suffield, Connecticut, brings this civil rights action *pro se*

under 42 U.S.C. § 1983 against three defendants: Dr. Lupas, APRN McPherson, and Dr. Brian

Schmidtberg.  He contends that the defendants were deliberately indifferent to his serious

medical needs in violation of the Eighth Amendment to the United States Constitution.  The

complaint was received on March 16, 2021.

**Motions to Reopen and Proceed *In Forma Pauperis***

Initially, Plaintiff sought to proceed in this case *in forma pauperis* but his motion was not

granted due to certain deficiencies in the motion.  On April 19, 2021, the court dismissed the

action because Brockett failed to respond to a Notice of Insufficiency requiring him to correct

these deficiencies. The court informed Brockett that he could move to reopen this case if he

could demonstrate good cause for failing to respond to the court's order and show that he is

unable to pay the $402.00 filing fee.  Doc. No. 8.  Brockett now moves to reopen his case, stating

that he did not receive the notice, and has submitted a complete motion to proceed *in forma*

*pauperis* showing that his current inmate account balance is $2.93.  Brockett's motions to reopen

and proceed *in forma pauperis* are granted.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious,

that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must

assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments

[they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v.*

*Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se*

litigants). Although detailed allegations are not required, the complaint must include sufficient

facts to afford the defendants fair notice of the claims and the grounds upon which they are based

and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).

Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.

**Allegations**

On March 14, 2014, Brockett was diagnosed with a tear in his left rotator cuff.  Doc. No.

1 ¶¶ 6-7.  Brockett was unable to find a surgeon in the Waterbury area who would accept his

insurance to repair the tear.  *Id.* ¶¶ 9-10.

Brockett was admitted to custody on November 5, 2015.  *See*

ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=252216.  Upon admission, he informed

correctional medical staff at New Haven Correctional Center about the tear.  Doc. No. 1 ¶¶ 12-

13.   Brockett assumes that New Haven Correctional Center medical staff obtained the hospital

report of the tear and forwarded it to MacDougall-Walker Correctional Institution

("MacDougall"), the facility to which Brockett had been transferred.  *Id.* ¶¶ 13-18.  At

MacDougall, Brockett continued to seek treatment for the torn rotator cuff.  *Id.* ¶ 19.

Dr. Naqvi saw Brockett on April 8, 2018 and prescribed ibuprofen and Elavil for pain.

*Id.* ¶¶ 22-23.  Although he did not want to refuse medication, Brockett did not want to take Elavil

as he understood it to be a psychiatric drug.  *Id.* ¶ 24.  Another medication was substituted for

Elavil.  *Id.* ¶ 25.

Brockett was scheduled to see a doctor in January 2019 for complaints of pain but, by

May 2019, still had not seen a doctor.  *Id.* ¶¶ 26-27.  In addition, his bottom bunk pass was about

to expire.  *Id.* ¶ 28.

APRN McPherson ordered an MRI in November 2019, but on his right shoulder.  *Id.* ¶¶

31-32.  Brockett asked the technicians at the University of Connecticut Health Center why the

MRI was being conducted on his right shoulder when his pain was in the left shoulder.  *Id.* ¶¶ 33-

34.  The technicians told him they could only perform an MRI on his right shoulder because that

was the order approved by the Utilization Review Committee.  *Id.* ¶¶ 35-37.  Brockett returned to

the University of Connecticut Health Center for examination and evaluation of his left shoulder

on December 27. 2019.  *Id.* ¶¶ 46-47.

During the December 27, 2019 appointment, Brockett was given two cortisone injections,

one in each shoulder.  *Id.* ¶ 48.  Brockett contends that two injections should never be given at

the same time.  *Id.* ¶ 49.  Brockett became unresponsive.  *Id.* ¶¶ 50-54.  The medical records note

that Brockett was unresponsive for about a minute, but Brockett believes he was unresponsive

for at least ten minutes and then "in and out" for a longer time. *Id.* ¶¶ 54-55. Brockett bases his

assessment of the time on the length of time between leaving and returning to the inmate waiting

room. *Id.* ¶¶ 56-63.

In September 2020, Brockett was called to go to the medical unit. *Id.* ¶ 104. Before he

could get his pass, a code was called. *Id.* ¶¶ 105-06. Brockett was sent back to his cell and told

that he could not go to the medical unit until the code was cleared. *Id.* ¶¶ 107. By the time the

code cleared, the officer said Brockett had to wait for the medical unit to call him again. *Id.* ¶¶

108-09. The medical unit never called. *Id.* ¶ 109.

The next day, Dr. Lupas, Brockett's medical provider, cut his medication dosage in half.

*Id.* ¶¶ 110-12. Brockett believes that Dr. Lupas reduced his medication dosage because he did

not go to his appointment the day before. *Id.* ¶ 113. Brockett submitted evidence about the code

but the refusal of the appointment was not removed from his medical file. *Id.* ¶¶ 118-23. The

dosages were corrected on January 14, 2021. *Id.* ¶¶ 125-26.

In July 2020, Brockett requested renewal of his bottom bunk pass. *Id.* ¶¶ 127-28. Dr.

Lupas called Brockett to the medical unit, looked at him, and stated, without examination, that

Brockett looked healthy and did not need a bottom bunk pass. *Id.* ¶ 129.

**Discussion**

Brockett asserts claims for deliberate indifference to medical needs based on the

following actions: (1) APRN McPherson ordered the MRI of the wrong shoulder, (2) Dr.

Schmidtberg gave him two cortisone injections at the same time, (3) Dr. Lupas decreased his

medication dosage, and (4) Dr. Lupas denied his bottom bunk pass without examining him.

4

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, Brockett must allege facts showing both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138. A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The defendants also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk that Brockett would suffer serious harm

5

as a result of their actions or inactions.  The defendants "need only be aware of the risk of harm, not intend harm.  And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See Salahuddin*, 467 F.3d at 279-80.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.  Nor does a disagreement over the treatment provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment …. [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Brockett alleges that his left shoulder is painful and that he has difficult supporting his weight when using a ladder to access a top bunk.  Shoulder pain can be a serious medical need. *See Guarneri v. Bates*, No. 05 Civ. 444(GLS)(DRH), 2008 WL 686809, at *5 (N.D.N.Y. Mar. 10, 2008) (shoulder injury constitutes a serious medical need where plaintiff contends that alleged rotator cuff tear left him in severe pain and unable to move his arm); *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (allegations of "severe pain ... [and] reduced mobility" in the shoulder are sufficient to raise a material issue of facts as to a serious medical need); *Goros v. Central Office Review Comm.*, No. 03 Civ. 407, 2006 WL 2794415, at *6 (N.D.N.Y. Sept. 26, 2006) (plaintiff's allegations of "worsening pain" in his left shoulder and

6

legs may establish a sufficiently serious medical need).  For purposes of initial review only, the

court will assume that Brockett's torn rotator cuff is a serious medical need.

**APRN McPherson**

Brockett alleges that APRN ordered an MRI of his right shoulder instead of his left

shoulder.  As support for his claim, Brockett refers the court to a consultation form bearing

APRN McPherson's name.  Compl. Ex. D, Doc. No. 1 at 32.  Although Brockett alleges that an

MRI was done only on the right shoulder, the consultation form noted the torn rotator cuff on the

left, increased pain in both shoulders and requested MRI's of both shoulders.  *Id.*  Brockett's

evidence also shows that APRN McPherson requested MRI's of both shoulders in response to

Brockett's claims of pain in both shoulders.  The medical evidence he submitted also shows that

Brockett has been diagnosed with bursitis in both shoulders.  *Id.* at 37, 42, 57.  Thus, APRN

McPherson was not deliberately indifferent to his medical needs.  As Brockett has presented no

evidence supporting his allegations, the claim against APRN McPherson is dismissed pursuant to

28 U.S.C. § 1915A(b)(1).

**Dr. Schmidtberg**

Brockett alleges that Dr. Schmidtberg gave him two cortisone injections at the same time,

one in each shoulder.  Brockett alleges that two cortisone injections should never be given at the

same time and accuses Dr. Schmidtberg of "overdosing" him.[1]  Brockett identifies no medical

information supporting his view and research reveals none. Thus, even if the conduct placed

Brockett at risk for harm, such risk was by no means obvious.

---

[1] Although Brockett alleges that he was "dead" Doc. No. 1 ¶ 54, the attached medical record states that "the patient did vasovagal after the second injection."  Doc. No. 1 at 40.  A vasovagal reaction is a fainting episode. *See* www.medicinenet.com/vasovagal_reaction/definition.htm.

Nor has the Court located any reported cases discussing whether giving two cortisone injections in different joints at the same time amounts to deliberate indifference to a serious medical need.  Thus, Brockett fails to state a plausible deliberate indifference claim against Dr. Schmidtberg.  Any actions by Dr. Schmidtberg constitutes, at most, negligence or perhaps a difference of opinion regarding appropriate treatment, neither of which is cognizable under section 1983.  The claim against him is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Dr. Lupas**

Brockett alleges that Dr. Lupas reduced his medication dosage on October 1, 2020 because he did not go to his medical appointment the previous day.  In response to his inmate request, the reviewer stated that lab results were needed to evaluate the effects of the medication on his liver, kidney, and blood functions and that his medications would be evaluated when the test results were received.  Doc. No. 1 at 49, 56.  Brockett's medication dosage was not restored until January 2021.  As his medical provider, Dr. Lupas was familiar with Brockett's complaints of pain, but waited three months to review his medications.  At this time, the court will permit the claim to proceed for further development of the record.

Brockett also alleges that Dr. Lupas refused to renew his bottom bunk pass without examining him.  As Dr. Lupas was aware of Brockett's medical issues but refused to examine him to determine whether the bottom bunk pass was still needed, the court will permit this claim to proceed as well.

**Orders**

Brockett's motions to reopen [**Doc. No. 9**] and for leave to proceed *in forma pauperis* [**Doc. No. 10**] are **GRANTED**.

8

All claims against defendants McPherson and Schmidtberg are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and the Clerk of the Court is directed to terminate these defendants. The case will proceed on the deliberate indifference claims against Dr. Lupas.

The court enters the following additional orders.

(1)      **The Clerk shall** verify the current work address for defendant Lupas with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to him at the address provided on or before **May 24, 2021**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)      T**he Clerk shall** send the plaintiff a copy of this Order.

(3)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above.  He also may include all additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **December 3, 2021.** Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed by **January 3, 2022.**

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 3rd day of May 2021 at Bridgeport, Connecticut.

　/s/　　　　　　　　　　　　　　　　　　
Kari A. Dooley
United States District Judge

10