UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN BROCKETT, | : | |
|         Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:21-cv-355 (KAD) |
| | : | |
| LUPAS, et al., | : | |
|         Defendants. | : | |

**INITIAL REVIEW ORDER RE AMENDED COMPLAINT**

When commencing this action, in his original complaint, plaintiff Steven Brockett ("Brockett") named three defendants - Dr. Lupas, APRN McPherson, and Dr. Brian Schmidtberg – and he alleged that these defendants were deliberately indifferent to his serious medical needs. On May 3, 2021, the Court dismissed the claims against defendants McPherson and Schmidtberg without prejudice and permitted the case to proceed against Dr. Lupas. Doc. No. 12. Brockett has now filed an amended complaint naming Dr. Francesco Lupis, APRN Chena McPherson, and RCOO Kristin Shea.[1]

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se*

---

[1] As shown in the medical records attached to the complaint, Dr. Lupis is the correct spelling for Dr. Lupas.

litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On March 14, 2014, Brockett was diagnosed with a tear in his left rotator cuff. Doc. No. 15 ¶¶ 6-7. Brockett had difficulty finding a surgeon in the Waterbury area who would accept his insurance to repair the tear. *Id.* ¶¶ 9-10. He was placed on a waiting list but was arrested before receiving treatment. *Id.* ¶¶ 11-12.

Brockett was admitted to custody on November 5, 2015. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=252216. Upon admission, he informed correctional medical staff at New Haven Correctional Center about the tear. Doc. No. 1 ¶¶ 12-13. Brockett assumes that New Haven Correctional Center medical staff obtained the hospital report of the tear and forwarded it to MacDougall-Walker Correctional Institution ("MacDougall"), the facility to which Brockett had been transferred. *Id.* ¶¶ 13-18. At MacDougall, Brockett continued to seek treatment for the torn rotator cuff. *Id.* ¶ 19.

Dr. Naqvi saw Brockett on April 8, 2018 and prescribed ibuprofen and Elavil for nerve pain. *Id.* ¶¶ 22-24. Although he did not want to refuse medication, Brockett did not want to take Elavil as he understood it to be a psychiatric drug. *Id.* ¶ 26. Another medication was substituted for Elavil. *Id.* ¶ 27.

Brockett first saw APRN McPherson on May 8, 2019. *Id.* ¶ 29. He complained of pain and inability to access a top bunk and sought renewal of his bottom bunk pass. *Id.* ¶ 30. In July 2019, APRN McPherson renewed Brockett's bottom bunk pass for a year and prescribed Tramadol for chronic shoulder pain caused by a torn rotator cuff. *Id.* ¶¶ 31-33. The medication dosage was subsequently increased and controlled his pain for a portion of the time. *Id.* ¶ 34.

APRN McPherson ordered an MRI in November 2019. *Id.* ¶ 35. Brockett asked the technicians at UConn Medical why the MRI was being conducted on his right shoulder when his pain was in the left shoulder. *Id.* ¶¶ 36-37. The technicians told him they could only perform an MRI on his right shoulder because that was the order approved by the Utilization Review Committee. *Id.* ¶¶ 38-40. Brockett returned to UConn Medical for examination and evaluation of his left shoulder on December 27. 2019. *Id.* ¶¶ 47-48.

During the December 27, 2019 appointment, Brockett was given two cortisone injections, one in each shoulder. *Id.* ¶ 49. The second injection caused Brockett to "pass out" from the pain. *Id.* ¶¶ 50-51. Following the treatment, Brockett discussed with APRN McPherson the treatment and MRI of his right rather than an updated MRI of his left shoulder. *Id.* ¶¶ 54-56. Brockett alleges that no treatment can be provided for his left shoulder because the MRI of his left shoulder is over a year old. *Id.* ¶¶ 57-58. APRN McPherson continued the Tramadol prescription as recommended by the orthopedic specialist at UConn. *Id.* ¶¶ 59-60.

Brockett first saw Dr. Lupis on July 1, 2020. *Id.* ¶¶ 67-68. Brockett requested a renewal of his bottom bunk pass. *Id.* ¶ 69. Dr. Lupis said that Brockett looked healthy enough and denied the pass without examining him. *Id.* ¶¶ 70-73. Dr. Lupis did not discuss an MRI of Brockett's left shoulder. *Id.* ¶ 74. Brockett requested a foam mattress and a foam wedge to

elevate his upper body, but the requests were denied. *Id.* ¶¶ 76-78. Brockett alleges that Dr. Lupis did not renew his bottom bunk pass until he filed complaints up the chain of command. *Id.* ¶¶ 137-38.

On October 14, 2020, Brockett wrote to RCOO Shea complaining about Dr. Lupis and a "punitive sanction applied to [his] ongoing pain management treatment." *Id.* ¶¶ 79-82. On September 30, 2020, a code was called within minutes after Brockett was called to the medical unit. *Id.* ¶¶ 83-84. Correctional policy prohibits inmate movement during a code. *Id.* ¶ 85. Brockett was not told he had been called to the medical unit until the following day. *Id.* ¶¶ 86-88. Brockett asked to have the code, the reason he did not attend the medical appointment, recorded in the unit log as well as a statement that Brockett had not been told about the summons. *Id.* ¶¶ 122-25.

The following day, Dr. Lupis discontinued Brockett's pain management medication, Motrin 400 mg, and decreased his Tramadol dosage by half. *Id.* ¶¶ 89-90, 100.[2] The new medication level provided no relief. *Id.* ¶ 101. In addition, a notation was included in Brockett's medical file that he had refused the appointment to have blood drawn. *Id.* ¶ 107. Brockett believes these actions coincided with the filing of a state court action that was subsequently withdrawn. *Id.* ¶¶ 120-21.

Brockett has written to RCOO Shea explaining the incident and asking to have the refusal removed from his file. *Id.* ¶¶ 108-110. Dr. Lupis did not reschedule the blood draw for over two months and took over two more months to restore Brockett's medication levels. *Id.* ¶¶ 116-18. As a result of the lack of blood pressure medication, Brockett's blood pressure was elevated from

---

[2] There are no paragraphs numbered 91-99.

4

October 1, 2020 through March 30, 2021. *Id.* ¶¶ 132-34.

On February 25, 2021, Brockett's cell was searched on a claim that he was hoarding pain medication. *Id.* ¶¶ 139-40. Nothing was found. *Id.* ¶ 141. However, Brockett's pain medication was changed from the effective Tramadol, to the non-effective Tylenol/codeine. *Id.* ¶¶ 144-45.

On October 21, 2020, Brockett was called to the A&P room for transport to a medical appointment. *Id.* ¶¶ 154-55. Brockett slipped on a spill on the floor striking his elbow and causing pain and a 2" abrasion. *Id.* ¶¶ 160-63. The correctional officer did not offer medical attention, instead telling him to seek medical attention when he arrived at UConn Medical. *Id.* ¶¶ 164-65. Brockett was seen in the emergency room. *Id.* ¶ 166. The "after summary report" recommended treatment of the injury using the RICE procedure when he returned to the facility, but Brockett was not seen. *Id.* ¶¶ 167-72. Brockett was told he would be called to the medical unit, but this did not happen. *Id.* ¶¶ 173-75. During this time, Dr. Lupis was refusing all of Brockett's requests to be seen. *Id.* ¶¶ 179-83.

**Discussion**

Brockett does not include a separate list of claims in his amended complaint. Within his statement of facts, he includes the following claims for deliberate indifference to medical needs: (1) APRN McPherson ordered the MRI of the wrong shoulder, (2) Dr. Lupis decreased his medication dosage in October 2020 and again in February 2021, (3) Dr. Lupis denied his bottom bunk pass without examining him and has not prescribed a foam mattress or wedge; (4) failure to provide medical attention for his injuries from the October 2020 fall, and (5) RCOO Shea failed to properly handle his grievances.

**Deliberate Indifference to Medical Needs**

The Court does not herein repeat the applicable standards for stating a claim under the Eighth Amendment for deliberate indifference to serious medical needs as those standards were set forth in the prior Initial Review Order. In the Initial Review Order on the original complaint, the Court assumed that Brockett has a serious medical need based on his torn rotator cuff and other shoulder issues. Doc. No. 12 at 6-7. Nothing in the amended complaint requires the court to revisit that assumption.

Brockett includes new allegations of an elbow injury suffered in a fall causing pain and a 2" abrasion. The report of the visit and the after-visit summary state he was seen for elbow pain and that routine RICE (rest-ice-compression-elevation) therapy was recommended with any needed follow-up at the facility. No pain medication was prescribed. Doc. No. 15 at 101-05, 113-19. Brockett fails to allege facts suggesting that this elbow injury is a serious medical need. Thus, any claim relating to treatment of that injury is not cognizable as an Eighth Amendment violation and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### APRN McPherson

Brockett again alleges that APRN ordered an MRI of his right shoulder instead of his left shoulder. In the Initial Review Order the Court dismissed this claim because Brockett's medical evidence failed to support his claim. Again, the evidence shows that APRN McPherson sought approval for an MRI of both shoulders, Doc. No. 15 at 57, but, as Brockett alleges, the Utilization Review Committee only approved an MRI for the right shoulder. Nothing in the amended complaint alters the determination that APRN McPherson was not deliberately indifferent to his medical needs. The claim against APRN McPherson is again dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Dr. Lupis

Brockett alleges that Dr. Lupis reduced his medication dosage on October 1, 2020 because he did not go to his medical appointment the previous day and refused all requests for treatment for several months thereafter. He adds allegations that Dr. Lupis discontinued his pain medication in February 2021. The Court previously determined that the claim against Dr. Lupis for denial of treatment will proceed for further development of the record. The new claim regarding discontinuance of medication in February 2021 will proceed as well.

Brockett also alleges that Dr. Lupis refused to renew his bottom bunk pass without examining him and adds that he denied requests for a foam mattress and wedge. Again, this claim against Dr. Lupis will proceed.

### RCOO Shea

Brockett adds RCOO Shea as a defendant and alleges that she improperly handled his grievances. He alleges that she did not respond quickly enough and relied on an entry Dr. Lupis made in his medical records to deny a grievance. Brockett has no constitutional right to have his grievances addressed or to receive a timely, or what he considers a proper, response. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Thus, any claim that RCOO Shea mishandled his grievances is not cognizable in federal court and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Retaliation**

Brockett alleges that Dr. Lupis' October 2020 actions "appear to coincide with a state superior court filing that has been withdrawn." Doc. No. 15 ¶¶ 120-21. To state a cognizable First Amendment retaliation claim, Brockett must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93-94. "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001). Courts consider the circumstances of the particular case when evaluating the second element. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)). A prisoner pursuing a retaliation claim may not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan*, 794 F.3d at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Brockett generally references a state court filing though does not indicate whether or to what extent it may have pertained to Dr. Lupis or otherwise affected Dr. Lupis. Filing a lawsuit is protected activity that satisfies the first element. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected

activity). Denial of medication and treatment for an extended period has been considered adverse action to support a retaliation claim. *See Thermond v. Thomas-Walsh*, 2019 WL 1429559, at *10 (S.D.N.Y. Mar, 29, 2019) (citing cases). Cases not finding an adverse action involved *de minimis* actions such as minimal delays or denial of one dose of medication. *Id.* at *11. Brockett's allegations that he received inadequate medication and no treatment for several months is sufficient to meet the second element. In addition, Brockett's allegation that the denial of medical treatment directly followed his filing in state court is sufficient to warrant further development of the record on the retaliation claim against Dr. Lupis.

**Orders**

All claims against defendants McPherson and Shea and the deliberate indifference to medical needs claims relating to Brockett's elbow injury are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk is directed to terminate McPherson and Shea as defendants. The case will proceed on the remaining deliberate indifference claims and the new retaliation claim against Dr. Lupis only.

The Clerk is directed to correct the spelling of Dr. Lupis' name on the docket.

The Court previously has ordered the complaint served on Dr. Lupis in his individual capacity. As Brockett now adds a request for injunctive relief, the court enters the following additional orders.

The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint and this Order on Dr. Lupis in his official capacity at the Office of the Attorney

9

General, 165 Capitol Avenue, Hartford, CT 06106, on or before **June 8, 2021** and to file a return of service on or before **June 17, 2021.**

The deadlines set forth in the Initial Review Order remain in effect.

**SO ORDERED** this 17th day of May 2021 at Bridgeport, Connecticut.

                                              /s/
                                              Kari A. Dooley
                                              United States District Judge