**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEVEN BROCKETT,            ) | Case No. 3:21-cv-355 (KAD) |
| *Plaintiff*,            ) | |
|                                  ) | |
| v.            ) | |
|                                  ) | |
| LUPIS, et al.,            ) | MAY 25, 2022 |
| *Defendants*.            ) | |

**MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NOS. 35 & 36]**

Kari A. Dooley, United States District Judge:

The Plaintiff, Steven Brockett ("Brockett"), commenced this civil rights action asserting claims for deliberate indifference to medical needs while confined at MacDougall-Walker Correctional Institution. In his Amended Complaint, Brockett added a claim for retaliation against Dr. Lupis. On May 17, 2021, the Court dismissed the Amended Complaint as to all defendants except Dr. Lupis. *See* Initial Review Order re Amended Complaint, Doc. No. 17. Dr. Lupis has filed a motion for summary judgment on the grounds that he was not deliberately indifferent to Brockett's medical needs, and he is protected by qualified immunity. For the following reasons, the motion for summary judgment is GRANTED. In addition, Brockett's retaliation claim is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[1]**

Dr. Lupis is a staff physician for the Department of Correction and has worked at MacDougall-Walker Correctional Institution ("MacDougall") since May 2020. Def. Local Rule 56(a)1 Statement ("LRS"), Doc. No. 35-1, ¶¶ 2, 4.

Dr. Lupis first saw Brockett on July 1, 2020. At this meeting, they discussed the MRI of Brockett's shoulder, his blood pressure medication, and Vitamin D for bone health. Brockett requested extra pillowcases and an egg crate mattress to provide more support for his back and shoulder while sleeping. *Id.* ¶ 5.[2] Dr. Lupis examined Brockett and conducted strength, range of motion, sensation and motor tests. All test results were within normal limits. Dr. Lupis prescribed Glucosamine, Chondroitin, and Vitamin D to address Brockett's bone health, specifically his shoulder and back issues. *Id.* ¶ 6. Requests for extra pillowcases and egg crate mattresses are generally handled by custody staff. Based on his evaluation, however, Dr. Lupis did not believe that extra pillows or pillowcases, an egg crate mattress or wedge were medically necessary for Brockett's shoulder or back issues. *Id.* ¶ 7.

Dr. Lupis saw Brockett again on July 7, 2020 to discuss his blood pressure medication.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Defendant informed Brockett of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 35-4. Although Brockett has filed a Local Rule 56(a)2 Statement, many of his denials do not contain citations to admissible evidence. Accordingly, any of Defendant's facts are deemed admitted if Brockett's objection or denial is not supported by admissible evidence. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

[2] Throughout his Local Rule 56(a)2 Statement, Brockett refers to exhibits from his medical file to support his contention that Dr. Lupis' statements are not entirely accurate or are misleading. Many of the documents, however, are also submitted by Dr. Lupis and do not support Brockett's claims that something other than what was reported occurred at the appointments. However, Brockett attaches a verification page to his opposition papers, Doc. No. 40 at 208 ("Pl. LRS"). Thus, the Court will consider Brockett's statements on pages 16–29 as a declaration in opposition to the motion for summary judgment.

3

At this meeting, Brockett said he had a hernia and requested a surgical consult. He also asked for a bottom bunk pass because of the hernia. *Id.* ¶ 8. Dr. Lupis restored Brockett's blood pressure medication to the prescription he had prior to July 1, 2020 and continued the order for blood pressure checks. Dr. Lupis did not provide Brockett a bottom bunk pass because he needed additional information and further evaluation of the hernia to determine whether Brockett met the Department of Correction's strict criteria for a bottom bunk pass. Dr. Lupis submitted requests for an ultrasound and a general surgical consultation to confirm that Brockett had a hernia and to determine whether treatment was required. *Id.* ¶ 9.

Brockett states that he requested renewal of the bottom bunk pass and the surgical consult at the July 1, 2020 appointment, not the July 7, 2020 appointment. Pl. LRS at 16–17, ¶¶ 1–3, 7, 12. He also states that Dr. Lupis ignored his opinions on July 1, 2020 regarding abruptly changing his blood pressure medication. *Id.* ¶ 4. Brockett contends that, although Dr. Lupis entered an order changing Lisinopril 20/25 HCTZ back to Lisinopril 5 mg, the medication he received was never changed, and states that he and the nurses distributing medication informed Dr. Lupis of this fact. *Id.* ¶ 11.

On July 18, 2020, Dr. Lupis renewed Brockett's prescription for Tramadol 50 mg to address his complaints of shoulder pain. This medication also would address any back pain or pain resulting from a hernia. Def. LRS ¶ 10. On August 13, 2020, Dr. Lupis again renewed the Tramadol prescription. *Id.* ¶ 11.

On August 15, 2020, Brockett was seen via nursing sick call for complaints of chest pain. During the examination, he complained of upper left arm numbness. The nurse evaluated Brockett for cardiovascular and cardiac issues, including chest pain, sweating, jaw pain and arm pain, the

4

primary symptoms of a heart attack. The nurse performed an EKG and a complete musculoskeletal examination. All findings were normal with no indication of a heart attack or left shoulder problems. *Id.* ¶ 12.

On August 18, 2020, Dr. Lupis renewed prescriptions for Ibuprofen for pain and Amlodipine for blood pressure. *Id.* ¶ 13. On September 4, 2020, he renewed Brockett's prescriptions for Tramadol and Vitamin D. *Id.* ¶ 14.

On July 20, 2020, Dr. Lupis ordered that bloodwork be performed on Brockett on September 1, 2020 to check cholesterol, kidney function, liver function, iron level, thyroid level and cancer markers. The tests were intended to determine whether Brockett's medications were negatively impacting his health. *Id.* ¶ 15.

On September 30, 2020, the unit officer reported that Brockett had refused, for the third time, to attend his appointment to have the blood work performed. *Id.* ¶ 16. The following day, Dr. Lupis adjusted Brockett's medication. He stopped the prescriptions for calcium, Ibuprofen, Pantoprazole and Vitamin D because Brockett had refused his blood work the previous day. Without the blood test results, Dr. Lupis concluded that he could not continue the medications because of their health risks and side effects. Dr. Lupis also cut Brockett's Tramadol dosage in half, decreasing it from two tablets twice per day to one tablet twice per day. Dr. Lupis did not believe it was medically appropriate to continue the higher dosage because of the risk of liver damage. *Id.* ¶ 17.

Dr. Lupis met with Brockett later that day to explain why he had stopped the prescriptions. Brockett told Dr. Lupis that he was not called for the bloodwork appointment the previous day and did not refuse the appointment. Dr. Lupis asked custody staff to investigate the incident. *Id.* ¶ 18.

Dr. Lupis increased Brockett's Lisinopril to better control his blood pressure and continued the Tramadol at the decreased dosage. *Id.* ¶ 19. Dr. Lupis submitted another request for blood work on October 13, 2020. *Id.* ¶ 20. Brockett states that he never requested that the Lisinopril be increased. Pl. LRS at 19 ¶ 19.

Brockett underwent an ultrasound on October 21, 2020 at UConn Health to determine whether he had a hernia. The test showed no evidence of hernia. Def. LRS ¶ 21.

While at UConn Health, Brockett was seen for complaints that he had slipped and fallen injuring his left shoulder, elbow and knee. The physician's assistant ("PA") noted a mild abrasion on Brockett's left forearm and limited range of motion at the baseline of the left arm but indicated that Brockett was able to then lift his left arm to shoulder level, had full extension at elbow level and had a good grip and radial pulses. She noted that the left knee had no redness, swelling or visible deformity and Brockett had full range of motion with no limitation. *Id.* ¶ 22. The PA found the examination "reassuring" but ordered left shoulder and elbow x-rays. The x-rays showed no fractures. *Id.* ¶ 23. The PA recommended conservative treatment of rest, ice, compression and elevation. *Id.* ¶ 24.

On November 2, 2020, Dr. Lupis renewed Brockett's prescription for Capsaicin cream, which is used to treat muscle or bone pain. *Id.* ¶ 25. Brockett's bloodwork also was completed on November 2, 2020. *Id.* ¶ 26.

On November 4, 2020, Dr. Lupis reviewed the bloodwork results and added Fenofibrate and fish oil to treat Brockett's elevated cholesterol. *Id.* ¶ 27. On November 13, 2020, Dr. Lupis renewed the prescription for Tramadol. As the ultrasound showed no evidence of hernia, Dr. Lupis did not believe it medically necessary to increase the Tramadol dosage. In addition, the evaluation

at UConn Health Emergency Room did not show a need for increased medication. *Id.* ¶ 28.

On December 7, 2020, Dr. Lupis renewed Brockett's blood pressure medication. *Id.* ¶ 29. On December 18, 2020, he renewed the Tramadol prescription. *Id.* ¶ 30. On January 5, 2021, Dr. Lupis renewed blood pressure medication and Nasacort for seasonal allergies. *Id.* ¶ 31.

Dr. Lupis saw Brockett on January 14, 2021. Brockett stated that he was experiencing back pain, which was causing headaches and increased blood pressure. Dr. Lupis performed a physical examination, which showed full range of motion without obvious weakness. Dr. Lupis increased Brockett's Tramadol prescription to two tablets twice per day to address his complaints of back pain. He ordered an x-ray because Brockett also was complaining of a cough and scheduled a follow-up appointment in a month. *Id.* ¶ 32. Brockett states that he complained of shoulder pain, never of back pain. Pl. LRS at 19 ¶ 20. Brockett also states that he was not examined at this appointment. *Id.* ¶ 25.

On January 26, 2021, Brockett attended a general surgery consult at UConn Health to review the ultrasound results and discuss options to address his abdominal pain. The consulting surgeons noted that Brockett had a hernia repair in 1998 and stated there was "nothing we can do for chronic pain from hernia repair." The surgeons recommended a local anesthesia injection/steroid injection or nerve ablation. They also mentioned the possibility of groin exploration and neurectomy but noted that this procedure has an inherent risk of recurrence of the hernia. One surgeon noted that Brockett agreed that this procedure should be pursued only as a final option. Dr. Lupis agreed with the recommendations of the surgeon that the procedure should be only a final option. He noted that the procedures were exploratory and would subject Brockett to invasive procedures with no guarantee of a favorable outcome. Def LRS ¶ 33.

7

On February 2, 2021, Dr. Lupis renewed Brockett's prescriptions for fish oil and Loratadine, prescribed for allergies. *Id.* ¶ 34. On February 17, 2021, he renewed Brockett's prescription for Tramadol. *Id.* ¶ 35. However, on February 25, 2021, nursing staff reported that Brockett was hoarding his medication and selling Tramadol in his housing unit. *Id.* ¶ 36.

Dr. Lupis saw Brockett the next day to address the nurse's note. Brockett said that the hoarded medication belonged to his cellmate. After the meeting, Dr. Lupis decided to change Brockett's medication from Tramadol, which cannot be crushed and is easily hoarded, to Tylenol 3, which can be crushed and cannot be as easily hoarded. Dr. Lupis also ordered urine tests to ensure that Brockett was personally using the Tylenol 3 and not hoarding or selling it. *Id.* ¶ 37. Brockett states that the hoarding allegation was disproven but provides no evidence supporting his statement. Pl. LRS at 21 ¶¶ 31, 33. He also states that no urine tests were conducted. *Id.* at 22 ¶ 35.

On March 16, 2021, Dr. Lupis renewed Brockett's blood pressure medication. Def LRS ¶ 38. On March 24, 2021, Dr. Lupis saw Brockett for complaints about pain and his blood pressure medications. Brockett also requested a foam wedge for his shoulders, tums, Vitamin D and Sebex shampoo. Dr. Lupis ordered tums, Sebex shampoo and Vitamin D. He also doubled Brockett's dosage of Tylenol 3. He did not prescribe Tramadol because of his concerns over hoarding and selling that medication. Dr. Lupis did not believe the foam wedge was medically necessary. *Id.* ¶ 39. Brockett contends that he told Dr. Lupis at this meeting that Tylenol 3 was causing constipation. Pl. LRS at 23 ¶ 43.

On April 30, 2021, Dr. Lupis prescribed Pantoprazole for GERD/acid reflux and renewed Brockett's blood pressure medication. Def LRS ¶ 40. On May 3, 2021, he renewed Brockett's

8

prescription for Tylenol 3, and on May 18, 2021, renewed the prescriptions for Tylenol 3, Nasacort and Ibuprofen. *Id.* ¶¶ 41–42.[3]

**Discussion**

In his Amended Complaint, Brockett asserted four incidents involving deliberate indifference to his medical needs against Dr. Lupis: (1) Dr. Lupis reduced his medication dosage on October 1, 2020; (2) Dr. Lupis changed Brockett's pain medication in February 2021; (3) Dr. Lupis refused to renew Brockett's bottom bunk pass without examining him; and (4) Dr. Lupis denied requests for a foam mattress and wedge. *See* Doc. No. 17 at 7. Brockett also asserted a retaliation claim against Dr. Lupis for denial of medical treatment directly following Brockett's filing of a habeas corpus action in state court. *See id.* at 9. Moving for summary judgment, Dr. Lupis addresses the deliberate indifference claims but does not address the retaliation claim.

---

[3] The Amended Complaint was filed on May 10, 2021. Notwithstanding, the records submitted include additional information regarding Plaintiff's treatment. Specifically, on June 25, 2021, Brockett saw a nurse and requested Tramadol instead of Tylenol 3. *Id.* ¶ 43. The same day, an APRN reviewed Brockett's chart and increased his blood pressure medication. *Id.* ¶ 44. On July 12, 2021, Dr. Lupis renewed Brockett's Tylenol 3 prescription. Although Dr. Lupis was unaware that Brockett wanted to switch back to Tramadol, he would not have ordered the change because of the previous hoarding incident. *Id.* ¶ 45. On July 14, 2021, Dr. Lupis renewed Brockett's cholesterol medication, his bone health medication, and blood pressure medication. *Id.* ¶ 46. On August 3, 2021, an APRN saw Brockett for complaints of abdominal pain and constipation. The APRN performed an abdominal x-ray, ordered bloodwork and scheduled a follow-up appointment with Dr. Lupis when the doctor returned from vacation. *Id.* ¶ 47. The bloodwork was completed on August 9, 2021. *Id.* ¶ 48. Dr. Lupis saw Brockett on August 26, 2021. He examined Brockett and diagnosed diverticulitis. Dr. Lupis ordered antibiotics for abdominal pain and changed Brockett's diet to maintain bowel rest. *Id.* ¶ 49. Dr. Lupis saw Brockett for a follow-up exam on August 30, 2021. Brockett reported that the antibiotics were helping, and he was getting better. Despite the improvement, Dr. Lupis decided to send Brockett for a CT scan if the issue was not fully resolved in two days. *Id.* ¶ 50. On September 1, 2021, Dr. Lupis sent Brockett to the hospital for an emergency CT scan as Brockett still had increased abdominal bloating, diarrhea with bloody stools, decreased bowel sounds and left lower quadrant tenderness. *Id.* ¶ 51. Brockett remained in the hospital until September 5, 2021. When he returned to MacDougall, Brockett refused to go to the infirmary for observation. *Id.* ¶ 52. Dr. Lupis evaluated Brockett on September 8, 2021. He diagnosed perforated diverticulitis and ordered a bottom bunk pass because of the diagnosis and Brockett's recent hospital stay. Dr. Lupis also prescribed Metamucil, regular strength Tylenol and a stool softener. The Tylenol prescription was in addition to the Tylenol 3 prescription, which Dr. Lupis renewed on September 27, 2021 and October 29, 2021. *Id.* ¶¶ 53–54, 56. In November 2021, Brockett transferred to Cheshire Correctional Institution and Dr. Lupis was no longer his medical provider. *Id.* ¶¶ 57–58.

In opposition to the motion for summary judgment, Brockett expands the nature of his claims significantly to include three additional medical issues that Dr. Lupis failed to address: an updated MRI of his left shoulder for treatment of a torn rotator cuff that was causing severe pain, a bloated abdomen from an enlarged spleen causing pain and discomfort with movement and highly elevated blood pressure causing headaches, mild sweating and blurred vision where Brockett has a family history of heart disease and hypertension. Pl. LRS at 18 ¶¶ 13–15. He also asserts claims arising out of his diverticulitis and treatment therefore, all of which occurred after the filing of the Amended Complaint. However, Brockett cannot amend his complaint to assert new claims in a memorandum in opposition to a motion for summary judgment. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint through memorandum filed in opposition to dispositive motion); *Purugganan v. AFC Franchising, LLC*, No. 20-CV-00360(KAD), 2021 WL 5301522, at *4 (D. Conn. Nov. 15, 2021) (plaintiff cannot amend complaint through memorandum). Thus, the only medical issues in this case are those included in the Amended Complaint.[4]

*Deliberate Indifference to Serious Medical Needs*

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To prevail on his claim for deliberate indifference to a serious medical need, Brockett must present evidence showing both that his need was serious and that Dr. Lupis acted with a sufficiently culpable state

---

[4] If Brockett wishes to pursue claims regarding his treatment for the conditions identified in opposition to the motion for summary judgment, he may do so in another action.

of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138. A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Dr. Lupis also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. He must have been *actually aware* of a substantial risk that Brockett would suffer serious harm as a result of his actions or inactions. *See id.* (emphasis in original). Dr. Lupis "need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983. *See Salahuddin v. Goord*, 467

F.3d 263, 279–80 (2d Cir. 2006). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838. Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment . . . . [T]he essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).

*Reduction in Medication Dosage on October 1, 2020 and Denial of Treatment*

Brockett contends that Dr. Lupis reduced his medication dosage on October 1, 2020 because Brockett did not go to his medical appointment the previous day and refused all requests for treatment for several months thereafter. Dr. Lupis states that he could not continue certain medications and the higher dosage of Tramadol without blood tests to evaluate whether they were causing health risks or side effects, particularly liver damage. Regardless of whether Brockett was responsible for failing to appear for the bloodwork, the medications could not be continued without the test results. Thus, Dr. Lupis ordered new bloodwork. After reviewing the results of the blood tests and other tests performed in the interim, which showed no evidence of a hernia and no need for stronger medication, Dr. Lupis concluded that the higher dosage of Tramadol was not medically required. The dosage was subsequently increased in January 2021 in response to Brockett's complaints of back or shoulder pain severe enough to cause headaches and affect his blood pressure.

The record evidence shows that Dr. Lupis based his decisions on his medical judgment informed by various reports and test results. A medical decision to prescribe one medication over another or a certain dosage of medication does not implicate the Eighth Amendment and is not actionable as deliberate indifference. *See Scott v. Perio*, No. 02-CV-578A, 2005 WL 711884, at *6 (W.D.N.Y. Mar. 25, 2005) (finding that in the absence of evidence that stronger medication was withheld for non-medical reasons, "[i]t is not for the Court to second guess plaintiff's medical providers as to what medicine or what dosage should have been prescribed to treat the plaintiff."). Brockett's claim appears to be simply a disagreement about treatment, which is not cognizable under Section 1983. *See Wright*, 622 F. App'x at 47.

Brockett also contends that Dr. Lupis refused to treat him for several months after October 1, 2020. The medical records show that Dr. Lupis ordered and reviewed new bloodwork, sent Brockett for an ultrasound and renewed various medications between October and December 2020. While Brockett did not meet with Dr. Lupis until January 14, 2021, Brockett presents no evidence that he sought an examination or, even if he had, that Dr. Lupis was aware of his request. And it is entirely unclear as to what medical need was not met by the lack of in person appointments with Dr. Lupis. In short, there is no genuine issue of material fact as to whether Dr. Lupis was deliberately indifferent to Brockett's medical needs in the months following October 1, 2020. He was not. Therefore, Dr. Lupis' motion for summary judgment is granted on the claim regarding the reduction of medication in October 2020 and alleged denial of treatment for several months thereafter.

*Change in Medication in February 2021*

Brockett states that Dr. Lupis discontinued Brockett's Tramadol[5] prescription in February 2021 based on an allegedly false claim that he was hoarding and selling his medication. In its place, Dr. Lupis prescribed Tylenol 3, a medication which can be crushed before taking, making it more difficult to hoard. *See* Def. LRS ¶ 37.

Although Brockett alleges that the hoarding charge was disproved, he submits no admissible evidence regarding the incident. Brockett states that he asked a nurse to have the medication changed back to Tramadol and states that the nurse would inform Dr. Lupis of his request. He presents no evidence, however, that Dr. Lupis received any communication regarding Brockett's request. Instead, Dr. Lupis states that he was unaware that Brockett wanted to switch back to Tramadol, but that even if he had known, he would not have ordered the change because of the previous hoarding incident. *See* Decl. of Dr. Lupis, Doc. No. 35-3, ¶ 45.

Absent evidence that Dr. Lupis was aware of Brockett's claims that the Tylenol 3 was ineffective in relieving his pain, Brockett fails to present evidence to support the subjective component of the deliberate indifference test. And again, a disagreement over treatment is not cognizable under section 1983. *See Munger v. Cahill*, No. 9:16-CV-728 (BKS/CFH), 2018 WL 4635709, at *11 & n.7 (N.D.N.Y. July 23, 2018) (plaintiff failed to establish that doctor knew of and disregarded excessive risk to plaintiff's health under subjective component of deliberate indifference test where doctor stated in declaration that he discontinued prescription based on his belief that prisoner was misusing drug and neither party offered evidence whether charge was

---

[5] Tramadol is an opioid analgesic used to relieve moderate to moderately severe pain, including pain after surgery, sold under several brand names including Ultram. *See* https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050.

14

true), *report and recommendation adopted*, 2018 WL 4179451 (N.D.N.Y. Aug. 31, 2018), *aff'd*, 792 F. App'x 110 (2d Cir. 2020); *see also Cole v. Kooi*, No 9:11-CV-0004 (LEK/RFT), 2013 WL 4026842, at *5 (N.D.N.Y. Aug. 6, 2013) (finding no deliberate indifference where prisoner's Ultram, a commercial name for Tramadol, prescription was discontinued after prisoner was caught hoarding doses of the medication). Dr. Lupis' motion for summary judgment is granted on this claim.

Likewise, the fact that a prescribed medication has side effects does not support a claim that prescribing such medication shows deliberate indifference to medical needs. *See Vail v. Lashway*, No. 9:12-CV-1245 (GTS/RFT), 2014 WL 4626490, at *14 (N.D.N.Y. Sept. 15, 2014) (citing cases). Therefore, Brockett's allegation that he told Dr. Lupis in March 2021 that Tylenol 3 was causing constipation does not establish a cognizable claim of deliberate indifference.[6]

### *Refusal to Renew Bottom Bunk Pass*

Brockett contends that Dr. Lupis refused to renew his bottom bunk pass when asked to do so in early July 2020. Brockett's medical records indicate that an order for a bottom bunk pass was in effect on October 1, 2020. Def. Mem. Ex. A, Doc. No. 37 at 17. As he was denied the pass for at most three months, this is a claim for delay in treatment. Where the claim is for a delay in treatment, the court focuses on the effect of the delay, not the underlying injuries, when determining if there is a serious medical need under the objective component of the deliberate indifference test. *See Carpenter*, 316 F.3d at 185–86. A "delay in treatment does not violate the

---

[6] Brockett attempts to add a claim that he should not have been prescribed Tylenol 3 because of his history of hepatitis. As discussed *supra*, Brockett did not incorporate this claim into his Amended Complaint and cannot do so by adding it to this memorandum in opposition to summary judgment. The Court also notes that Brocket submitted evidence contradictory to this claim in the form of a nurse's note from June 25, 2021, stating that Brockett was cleared to take Tylenol 3. *See* Pl. LRS at 164.

constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance*, 143 F.3d at 703.

The order renewing the bottom bunk pass is not in the medical records submitted by either party. The Court assumes, therefore, that Dr. Lupis caused Brockett to be without a bottom bunk pass for, at most, three months. Brockett has presented no evidence showing the actual medical consequences of any delay in issuing the bottom bunk pass. Indeed, he does not reference the bottom bunk pass in any subsequent medical records and presents no evidence that he was assigned a top bunk before the bottom bunk pass was reissued. As Brockett has presented no evidence showing that the delay in reissuing the pass exacerbated his injuries or caused any harm other than possible discomfort or pain, he has not demonstrated a genuine issue of material fact regarding the objective element of the deliberate indifference standard. *See Ward v. Capra*, No. 16-CV-6533 (KMK), 2019 WL 1922290, at \*5 (S.D.N.Y. Apr. 30. 2019) (to satisfy objective element delay must have lasted for needlessly prolonged period, caused extreme pain, or exacerbated serious illness) (citation omitted); *Martin v. City of New York*, 11-CV-4507 (ARR), 2016 WL 11431027, at \*5 (E.D.N.Y. Mar. 7, 2016) (summary judgment appropriate where plaintiff offers no evidence showing that delay exacerbated injury or caused any harm beyond pain during delay). Dr. Lupis' motion for summary judgment is granted on the claim for delay in renewing the bottom bunk pass.

*Denial of Foam Mattress and Wedge*

Brockett states that Dr. Lupis denied his request for a foam mattress and wedge in July 2020. Dr. Lupis told Brockett that permission to have these items might be a custody issue and, in any event, he did not consider the items medically necessary. *See* Def. LRS ¶ 7. Brockett again

16

requested a foam wedge on March 24, 2021. Dr. Lupis said he would investigate the matter, but the issue may be controlled by custody, not the medical unit. *See* Pl. LRS at 140, 143.

Brockett provides no evidence showing that issuance of a foam mattress or wedge was medically necessary, or even that the medical unit could issue these items. If the medical unit is unable to issue a foam wedge or mattress, Brockett cannot state a cognizable claim against Dr. Lupis. If the medical unit can issue the items, this claim involves, at most, a disagreement regarding treatment, which once again is not actionable under Section 1983. Dr. Lupis' motion for summary judgment is granted on this claim.

*Retaliation*

In his Amended Complaint, Brockett included a claim for retaliation against Dr. Lupis, alleging that Dr. Lupis' October 2020 actions "appear to coincide with a state superior court filing that has been withdrawn." Am. Compl., Doc. No. 15, ¶¶ 120–21. The actions consist of the changes to his prescriptions resulting in inadequate medication and no treatment for several months thereafter.

To state a cognizable First Amendment retaliation claim, Brockett must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93–94. Upon initial review, the court determined that filing a lawsuit is protected activity and the alleged actions were sufficiently adverse. However, the court

17

noted that further development of the record was needed to determine whether the required causal connection was present. Dr. Lupis has not addressed this claim in his motion for summary judgment.

Brockett has submitted a copy of the state habeas petition in which he contends that he is provided inadequate medical care. Pl. LRS at 103–07. Brockett signed the petition on October 16, 2020, two weeks after Dr. Lupis changed Brockett's medications and several days after Dr. Lupis submitted a new order for bloodwork. Brockett complains about these actions in the petition. Thus, Dr. Lupis' orders changing Brockett's medications were not caused by the state habeas action. *Id,* at 104.

Brockett's allegation that Dr. Lupis provided no treatment for several months is contradicted by the medical records. Brockett underwent an ultrasound in October 2020 which showed no evidence of hernia. Brockett completed blood tests on November 2, 2020, after which Dr. Lupis reviewed the results and adjusted Brockett's medications. However, as the ultrasound showed no evidence of hernia, Dr. Lupis determined that the Tramadol dosage did not need to be increased. His opinion was supported by a recent evaluation in the hospital emergency room. The medical records, which reflect the medical bases for treatment decisions, show that Brockett has received consistent treatment throughout this period. As there is no evidence in the record to support Brockett's allegation of retaliatory conduct, the retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1) (requiring the court to dismiss as soon as practicable portions of the complaint that fail to state a claim upon which relief may be granted).

**Conclusion**

Defendant Lupis' motion for summary judgment [**Doc. No. 35**] on the claims for deliberate

indifference to serious medical needs is **GRANTED**. Brockett's retaliation claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk is directed to enter judgment and close this case.

Defendant's motion to seal Brockett's medical records [**Doc. No. 36**] is **GRANTED**.

**SO ORDERED** this 25th day of May 2022 at Bridgeport, Connecticut.

*Kari A. Dooley*
Kari A. Dooley
United States District Judge
